UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYNN M., JR.,[1] | ) | CIVIL ACTION NO. 4:21-CV-2126 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Plaintiff Lynn M. Jr., an adult male who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find the Commissioner's final decision is not

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

supported by substantial evidence. Accordingly the Commissioner's final decision will be VACATED and this case remanded for further proceedings.

## II.    BACKGROUND & PROCEDURAL HISTORY

In late April or May 2019, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 11, 14, 95, 225-32; Doc. 13-2, pp. 11, 14; Doc. 13-5 pp. 8-15) (Doc. 17, p. 17; Doc. 18, p. 1). In this application, Plaintiff alleged he became disabled on September 22, 2016. (Admin. Tr. 14, 172, 203; Doc. 13-2, p. 15; Doc. 13-4, pp. 60, 91). However, at his administrative hearing Plaintiff amended the alleged onset date of disability to March 29, 2019, when he was 51 years old. (Admin. Tr. 14; Doc. 13-2, p. 15). He alleges he is unable to work due to the following conditions: bipolar disorder, post-traumatic stress disorder, anxiety, sleep apnea, chronic back pain, high blood pressure, gastroesophageal reflux disease, and muscle spasms. (Admin. Tr. 14, 246; Doc. 13-2, p. 15; Doc. 13-6, p. 7). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and complete tasks. (Admin. Tr. 260; Doc. 13-6, p. 21). Plaintiff has at least a high school education. (Admin. Tr. 30; Doc. 13-2, p. 31). Plaintiff has no past relevant work. (Admin. Tr. 30; Doc. 13-2, p. 31).

On August 8, 2019, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 14, 119; Doc. 13-2, p. 15; Doc. 13-4, p. 7). On

October 31, 2019, Plaintiff requested an administrative hearing. (Admin. Tr. 14, 127; Doc. 13-2, p. 15; Doc. 13-4, p. 15).

On November 16, 2020, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Michelle Stolls (the "ALJ"). (Admin. Tr. 14, 37-73; Doc. 13-2, pp. 15, 38-74). On February 26, 2021, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 11-36; Doc. 13-2, pp. 12-37). On April 6, 2021, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 218; Doc. 13-4, p. 106).

On October 19, 2021, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1-6; Doc. 13-2, pp. 2-7).

On December 20, 2021, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the law. (Doc. 1). As relief, Plaintiff requests that the court reverse the administrative decision, award Plaintiff disability benefits, or remand Plaintiff's case for a new hearing. (Doc. 1, p. 3).

On March 10, 2022, the Commissioner filed an answer. (Doc. 12). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial

evidence. (Doc. 12). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 13).

Plaintiff's Brief (Doc. 17), the Commissioner's Brief (Doc. 18), and Plaintiff's Reply (Doc. 19 ) have been filed.  This matter is now ready to decide.

## III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[2] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[4] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[5] But in an adequately

---

[2] *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[3] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[4] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[5] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[6] "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."[7]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[8]

---

[6] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[7] *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

[8] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[9] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[10]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[11]

---

[9] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[10] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

[11] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

### B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[12] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[13]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[14] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do

---

[12] 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).
[13] 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).
[14] 20 C.F.R. § 416.920(a).

any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[15]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[16] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[17]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[18] Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[19]

---

[15] 20 C.F.R. § 416.920(a)(4).

[16] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).

[17] 20 C.F.R. § 416.945(a)(2).

[18] 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.

[19] 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

## IV.   DISCUSSION

Plaintiff raises the following issues in his statement of errors:

(1)    "The ALJ erroneously found that Plaintiff did not require an assistive device to ambulate." (Doc. 17, p. 4).

(2)    "The ALJ rejected the opinion of the treating pain management specialist for erroneous reasons." *Id*.

(3)    "The ALJ failed to present a hypothetical question containing all of Plaintiff's credibly established limitations to the Vocational Expert, whose testimony thus did not constitute substantial evidence supporting the decision." *Id*.

(4)    "The ALJ erred in failing to find Plaintiff limited to sedentary exertion by his impairments, and thus disabled pursuant to the Medical Vocational Guidelines." *Id*.

We begin our analysis by summarizing the ALJ's findings, then will address whether substantial evidence supported the ALJ's decision.

### A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION(S)

In her February 2021 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between March 29, 2019 (Plaintiff's alleged onset date) and February 26, 2021 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 11, 14, 31; Doc. 13-2, pp. 12, 15, 32). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe

impairments: obesity; degenerative disc disease of the lumbar spine with left leg radiculopathy, paresthesia, and sciatica status post-surgery; obstructive sleep apnea; bipolar disorder; major depressive disorder; persistent depressive disorder; dysthymic disorder; post-traumatic stress disorder; and borderline intellectual functioning. (Admin. Tr. 17; Doc. 13-2, p. 18). The ALJ found that the following disorders were non-severe: hypertension, chronic stage 3 kidney disease, hyperlipidemia, gastroesophageal reflux disease, nicotine dependence and anemia secondary to inadequate dietary iron intake. (Admin Tr. 17-18; Doc. 13-2, pp. 18-19). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 18-22; Doc. 13-2, pp. 19-23).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 416.967(b) subject to the following additional limitations:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, or kneeling, crouching, or crawling, and climbing on ramps and stairs and must avoid occupations that require climbing on ladders, ropes, or scaffolds. He must avoid occupations that require pushing or pulling with the lower extremities to include the operation

of pedals. He must avoid concentrated prolonged exposure to temperature extremes, vibration, or extreme dampness and humidity. He is limited to occupations which do not require exposure to hazards such as dangerous machinery or unprotected heights. He is limited to unskilled work activity as defined in the Dictionary of Occupational Titles that is low stress, defined as only occasional decision making required and only occasional changes in the work setting. The claimant is further limited to occupations which require no prolonged reading for content and comprehension or complex mathematical calculations such as cashier or teller work.

(Admin. Tr. 22; Doc. 13-2, p. 23).

At step four, the ALJ found that, during the relevant period, Plaintiff had no past relevant work. (Admin. Tr. 30; Doc. 13-2, p. 31). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 30-31; Doc. 13-2, pp. 31-32). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: routing clerk per DOT 222.687-022; mail clerk per DOT 209.687-026; and retail marker per DOT 209.587-034. (Admin. Tr. 30; Doc. 13-2, p. 31).

### B. WHETHER THE ALJ ERRED IN ERRONEOUSLY FINDING PLAINTIFF DID NOT REQUIRE AN ASSISTIVE DEVICE TO AMBULATE

The Social Security ruling on the implications of an RFC of less than a full range of sedentary work and a medically required hand-held device instruct:

Medically required hand-held assistive device: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.[20]

---

[20] S.S.R. 96-9P, 1996 WL 374185 (West).

Plaintiff argues that the ALJ erroneously found he did not require an assistive device to ambulate despite having a physician's prescription. (Doc. 17, p. 6). Plaintiff argues that because of this, the ALJ failed to include the limitations posed by his need for the device in her RFC determination. *Id*. On March 26, 2020, Plaintiff had a L4-5 laminectomy and discectomy and two months later was prescribed a cane to assist with ambulation. (Doc. 17, p. 8). Plaintiff argues that the evidentiary and testimonial record shows he has significant pain in his back and leg significantly impacting his ability to stand and walk and thus, two months post-surgery, Dr. Gorski prescribed a cane for ambulation. *Id*.

Plaintiff contends that the ALJ relied on her lay opinion and lay interpretation of medical findings to find that "objective findings do not support required use of a cane." (Doc. 17, p. 8; Doc. 19, p. 3) (Admin. Tr. 29; Doc. 13-2, p. 30). The ALJ also relied on the fact that at his next visit after being prescribed the cane on July 27, 2020 there was no indication in his chart that he was using a cane to ambulate. (Doc. 17, p. 9; Doc. 19, p. 4) (Admin. Tr. 25, 29; Doc. 13-2, pp. 26, 30). Plaintiff argues that this is incorrect, that the absence of a note documenting Plaintiff was using a cane does not automatically mean that he was not, it only means whether he was using a cane was not recorded. (Doc. 17, p. 9; Doc. 19, p. 4). Plaintiff cites to treatment records for appointments on July 31, 2020, and November 3, 2020 that record Plaintiff's gait was "antalgic, uses walking stick." (Doc. 17, p. 9; Doc. 19, p.

4) (Admin. Tr. 1864, 1972; Doc. 13-7, pp. 1562, 1670). Plaintiff notes that at the July 31, 2020 appointment it was recorded that his back pain was 8/10 and his coordination was disturbed and he had a loss of balance. (Doc. 17, p. 9; Doc. 19, p. 4) (Admin Tr. 1864; Doc. 13-7, p. 1562). Plaintiff argues that the record does establish Plaintiff was prescribed an assistive device, procured and utilized such device and that the ALJ's contrary finding was erroneous and harmful because the ALJ did not incorporate the limitations posed by an assistive device into the RFC. (Doc. 17, p. 9).

In response, the Commissioner argues that substantial evidence supports the ALJ's determination that a cane was not medically required. (Doc. 18, p. 15-19). The Commissioner contends the ALJ addressed "this examination and observations of intermittent use of walk stick," and "explained why these limited instances, when viewed with the overall record, did not support incorporating the use of a cane into the record." (Doc. 18, p. 15). The Commissioner argues that even where there is medical documentation establishing the need for an assistive device, an ALJ may, but not must, incorporate the use into an RFC. (Doc. 18, pp. 15-16). Further, the Commissioner argues that the Third Circuit has found that a physician's recommendation, even in their medical opinion, and observations of cane use can be insufficient to support a finding of medical necessity where the ALJ determines there is contradictory evidence indicating an assistive device is not required. *Id*.

Page 14 of 20

The Commissioner contends the ALJ properly addressed the examination where the cane was prescribed and Plaintiff's subsequent medical records and found the state agency physicians' findings that Plaintiff could perform light exertional work contrary to his assertion he needed an assistive device. (Doc. 18, p. 17). The Commissioner argues that the ALJ's evaluation is supported by substantial evidence: Plaintiff's reported decreasing symptoms following surgery, that he only experienced mild and minimal pain, that while he used his walking stick at neurosurgery appointments he had a normal gait at his pain management sessions, that the state agency physicians' considered the record before surgery, when his symptoms were worse, and opined he could still perform light exertional work. (Doc. 18, p. 18). Thus, according to the Commissioner, the ALJ did not rely on lay opinion but considered the facts of the case as she was required to do. (Doc. 18, pp. 18-19).

However, while the ALJ objectively described and summarized Plaintiff's medical records, including the appointments that took place after his surgery, the ALJ did not include a large portion of the post-surgical record in her explanation as to why an assistive device was unnecessary. The Commissioner's assertions that the ALJ's evaluation is supported by Plaintiff's reported decreasing symptoms, normal gait, and the state agency physicians' finding of a light exertional work RFC before surgery when symptoms were worse, are post-hoc rationalizations and explanations.

The ALJ's decision must rise and fall on the contents therein, not arguments made in the Commissioner's brief in opposition.

The ALJ's explanation of why she found an assistive device unnecessary reads:

> Nicholas Gorski, D.O. prescribed a cane to assist with walking on May 19, 2020 (Exhibit F19F, pp. 11, 14). However, the [ALJ] finds objective findings do not support required use of a cane, such as mild tenderness and appropriate healing only 2 months post surgery. Additionally, there is no indication it was used at the next visit in July 2020 (Exhibit F19F, pp. 3-7). As such, the [ALJ] finds the requirement of use of a cane not persuasive.

(Admin. Tr. 29; Doc. 13-2, p. 30). Prior to making this finding, the ALJ provided a thorough description and statement of Plaintiff's medical records and background. This included appointments that occurred after the July 2020 visit cited in her explanation:

> On July 31, 2020, the claimant again reported minimal intermittent pain three months post- surgery. His surgical scar was well-healed and he had physical and mental examinations within normal limits, although he had an *antalgic gait and used a walking stick*. The claimant was *diagnosed with chronic bilateral low back pain with left-sided sciatica, left leg paresthesias, and being status post lumbar laminectomy* (Exhibit F20F, pp. 2-5).
>
> The claimant treated with Dr. Khan again on August 26, 2020 for a scheduled bilateral SI joint injection. He reported *difficulty walking and had positive SI joint tenderness upon examination, reduced range of motion, and positive Faber's test*, however, his examination continued to show intact gait, normal sensation, and negative straight leg raise, similar to earlier examinations (Exhibit F21F, p. 3). By October 16, 2020, the claimant reported medications and injections helping his pain

and having more than a 70 percent decrease in pain (Exhibit F25F, p. 1). He had *some reduced range of motion, positive lumbar muscle spasm and tenderness, and loss of lumbar lordosis, with a positive Faber's test*, but muscle strength was 5/5 and the claimant had a negative straight leg raise. He was neurologically intact and had a normal psychiatric examination, being oriented to person, place, and time, with coherent thought processes, good insight, no delusions or hallucinations, intact recent and remote memory, appropriate fund of knowledge, intact cognitive functions, and neutral mood (Exhibit F25F, pp. 4-6).

The claimant had a follow-up visit with neurosurgery on November 3, 2020 (Exhibit F26F). He reported *bilateral leg cramping with intermittent back pain rated as a 2-3/10*. He denied any leg pain, numbness, tingling, or weakness. The claimant was 308 pounds, with a body mass index of 41.77. *A physical examination noted an antalgic gait and use of a walking stick, with trace left leg weakness, and some diminished lower extremity weakness. He was positive for dizziness and tingling in the bilateral lower extremities.* However, the remainder of his examination was within normal limits. He was advised to continue conservative measures and pain management and *diagnosed with chronic bilateral low back pain without sciatica.* It was noted that no follow- up evaluation was needed (Exhibit F26F, pp. 11-13).

(Admin. Tr. 25; Doc. 13-2, p. 26) (emphasis added). However, while the ALJ did a thorough description and statement of these medical records, the ALJ did not address them in her explanation of why she found the requirement of the use of a cane not persuasive.

The Third Circuit does not "expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical

records . . . ."[21] However, the Third Circuit does "expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."[22] Further, an ALJ may not "cherry-pick []" or "ignore[e] medical assessments that run counter to her finding."[23] "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects."[24] In this case, the ALJ's review of the evidence is not complete and overlooks objective findings that may be favorable to Plaintiff.

In her explanation of her finding that "the requirement of use of a cane [is] not persuasive," the ALJ fails to address or even mention the appointments that took place after the July 2020 visit where there was no record of whether Plaintiff was using an assistive device. (Admin. Tr. 29; Doc. 13-2, p. 30). The ALJ did not explain why she found the medical treatment records of these later appointments to be unpersuasive as she was required to do.[25] For example, the ALJ does not explain why she discounted Plaintiff's recorded use of an assistive device, antalgic gate, and

---

[21] *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

[22] *Id*.

[23] *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 535 (3d Cir. 2011) (citing *Dougherty v. Barnhart*, Civ. No. 05-5383, 2006 WL 2433792, at *10 n.4 (E.D. Pa. Aug. 21, 2006); *Colon v. Barnhart*, 424 F. Supp. 2d 805, 813-14 (E.D. Pa. 2006)).

[24] *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Stewart v. Sec. of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983)).

[25] *Id*. (quoting *Stewart*, 714 F.2d at 290).

various diagnoses, all of which she summarized and described earlier in her decision. (Admin Tr. 25, Doc. 13-2, p. 26). "The ALJ's failure to mention and explain this contradictory medical evidence was error."[26] Nor does the ALJ explain or mention Plaintiff's testimony regarding his use of an assistive device and why she found it unpersuasive. Plaintiff testified he uses an assistive device when he walks because he is afraid of losing his balance and it helps him be stable. (Admin Tr. 55-56; Doc. 13-2, pp. 56-57).

"In the absence of [indications of which evidence the ALJ rejects and her underlying reasoning] the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."[27] Here, the Court does not know whether the ALJ rejected, or ignored Plaintiff's testimony and the medical treatment records dated after the July 2020 appointment on which she relies.

Instead of explaining why she was rejecting or discounting these treatment records and Plaintiff's testimony, the ALJ is silent on Plaintiff's testimony and appointments after the July 2020 appointment she references, only relying on the objective findings of "mild tenderness and appropriate healing" and stopping her explanation at the July 2020 appointment where there was no record of whether Plaintiff was using an assistive device. This is an impermissible "cherry-pick[ing]"

---

[26] *Burnett*, 220 F.3d at 122.
[27] *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

of evidence to support her finding the requirement of use of an assistive device not persuasive.[28] For the above reasons, remand is required.

## C.   PLAINTIFF'S REMAINING ARGUMENTS

Given that the Court finds it necessary to Plaintiff's case because the ALJ's decision is not supported by substantial evidence the Court will not address Plaintiff's remaining claims of error.[29]

## V.   CONCLUSION

Accordingly, I find that Plaintiff's request for remand to the Commissioner for a new hearing be Granted as follows:

(1)   The final decision of the Commissioner will be VACATED.

(2)   This case will be REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3)   Final judgment will be issued in favor of Lynn M., Jr.

(4)   Appropriate Orders will be issued.

Date: July 24, 2023                          BY THE COURT

                                             *s/William I. Arbuckle*
                                             William I. Arbuckle
                                             U.S. Magistrate Judge

---

[28] *Rios*, 444 F. App'x at 535.

[29] *See Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. Dec. 30, 2015) (Cohn, M.J.), *report and recommendation adopted*, 156 F. Supp. 3d at 582 (M.D. Pa. Jan. 13, 2016) (Kane, J.) (explaining that "[a] remand may produce different results on these claims, making discussion of them moot.").